# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYLING MAA, individually and as personal representative of the ESTATE OF WILSON MAA, and the ESTATE OF WILSON MAA, Plaintiffs, <br><br> v. <br><br> CARNIVAL CORPORATION & PLC and PRINCESS CRUISE LINES, LTD., Defendants. | CV 20-6341 DSF (SKx) <br><br> Order DENYING Plaintiffs' Motion to Remand (Dkt. 24) and GRANTING Defendants' Motions to Dismiss (Dkts. 17, 19) |

Defendants Carnival Corporation and Carnival plc (erroneously sued as Carnival Corporation & PLC), and Princess Cruise Lines Ltd. move to dismiss Plaintiffs Toyling Maa and the Estate of Wilson Maa's Complaint in its entirety.  Dkt. 17-1 (Carnival Mot.); Dkt. 19-1 (Princess Mot.).  Plaintiffs oppose, Dkt. 21 (MTD Opp'n), and move to remand, Dkt. 24 (Remand Mot.).  Defendants oppose Plaintiffs' motion. Dkt. 29 (Remand Opp'n).  The Court deems these matters appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, motion to remand is DENIED and the motions to dismiss are GRANTED.

## I. BACKGROUND

On March 5, 2020, Toyling and Wilson Maa set sail on the Coral Princess from San Antonio, Chile.  Dkt. 1-1 (Compl.) ¶¶ 2, 12-13.  On March 14, 2020, nine days into the cruise, the passengers received the

"first notification . . . that anything had changed" when they were "no longer permitted to go ashore at their scheduled ports of call." Id. ¶ 73. No other heightened protective measures were taken and "life aboard the *Coral Princess* continued as usual." Id. On March 17, 2020, all passengers had their temperatures taken. Id. ¶ 74. On March 19, 2020, the ship arrived at Buenos Aires, Argentina where about 500 passengers were permitted to disembark. Id. ¶ 76. The remaining passengers were informed that the Coral Princess would be departing for Fort Lauderdale, Florida. Id. ¶ 78. By March 30, 2020, several passengers had reported feeling ill, including Mr. Maa who had developed a fever. Id. ¶¶ 82, 92. Some were tested for Coronavirus, however, because Coral Princess did not have the ability to obtain test results on the ship, it was unknown at that time if any passengers or staff had the virus. Id. ¶ 82.

On March 31, 2020, Princess provided an update that the medical center on the ship reported a "higher-than-normal number of people presenting influenza-like symptoms." Id. ¶ 83. It then asked passengers to self-isolate in their rooms "given the concern surrounding COVID-19 (coronavirus)." Id. Until that date, passengers enjoyed "free run of the ship." Id. Based on the March 31 update, Mrs. Maa contacted medical staff aboard the ship and a doctor came to her cabin and administered a COVID-19 test to Mr. Maa. Id. ¶ 93. The doctor recommended that Mr. Maa get x-rayed, but the medical staff at the medical center advised that there was no reason to do so. Id. ¶¶ 93- 94. That same day, the ship made a stop in Barbados where 13 test samples were transmitted; 12 of those tests were positive. Id. ¶¶ 84- 85. By April 3, 2020, two passengers had died onboard from COVID-19, a fact Defendants failed to disclose. Id. ¶ 86.

The Fort Lauderdale Coast Guard denied permission for the Coral Princess to dock; it finally docked in Miami, Florida on April 4, 2020. Id. ¶¶ 87-88. Passengers requiring immediate medical attention were taken to the hospital, but other passengers were not permitted to disembark until April 6, 2020. Id. ¶ 88. The Maas remained on the boat and on April 4 Mr. Maa was put on oxygen. Id. ¶ 96. Around 2 p.m. medical staff advised that they called an ambulance because the

ventilator on board was not strong enough.  Id. ¶ 98.  However, an ambulance was not called until about 9 p.m.  Id. ¶¶ 99-101.  Mrs. Maa also began exhibiting symptoms of COVID-19, including fever, chills, and coughing.  Id. ¶ 97.  At 10 p.m., the ambulance finally arrived and took Mr. Maa to the hospital; he died two hours later.  Id. ¶¶ 101-102.  Around 4 p.m. the next day, an ambulance took Mrs. Maa to the hospital, id. ¶ 103, where she remained until April 22, 2020, id. ¶ 104.  She returned home to California on April 24, 2020.  Id. ¶ 105.

Plaintiffs bring two claims for negligence, one of which is a "survivor cause of action."

## II. LEGAL STANDARD

### A.    Remand

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by [the] Constitution and statute . . . ."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  A defendant may remove an action to federal court if the federal court could exercise subject matter jurisdiction over the action.  28 U.S.C. § 1441(a).  "The removal statute is strictly construed against removal jurisdiction" and "[t]he defendant bears the burden of establishing that removal is proper."  Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009).  If a defendant fails to meet its burden of establishing the Court has subject matter jurisdiction, the suit is remanded.  28 U.S.C. § 1447(c).

### B.    Motion to Dismiss

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).  A complaint must "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).  As a general rule, leave to amend a complaint that has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).

## III. DISCUSSION

### A.   Motion to Remand

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  28 U.S.C. § 1333(1).  The Supreme Court has interpreted the so-called "saving-to-suitors" clause to bar state courts from considering "those maritime causes of action begun and carried on as proceedings in rem" but "leave[s] state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam.'"  Madruga v. Superior Court of State of Cal. in & for San Diego Cty., 346 U.S. 556, 560-61 (1954).  "Therefore, a plaintiff with in personam

maritime claims has three choices: He may file suit in federal court under the federal court's admiralty jurisdiction, in federal court under diversity jurisdiction if the parties are diverse and the amount in controversy is satisfied, or in state court." Ghotra by Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1054 (9th Cir. 1997). "The same substantive law pertains to the claim regardless of the forum, a type of 'reverse-Erie' to ensure the uniform application of admiralty law." Id. at 1055; see also Adamson v. Port of Bellingham, 907 F.3d 1122, 1126 (9th Cir. 2018) ("[I]f the district court could have maritime jurisdiction over a tort claim, '[s]ubstantive maritime law controls' the claim, 'whatever the forum or asserted basis of jurisdiction.'" (alteration in original) (quoting Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 366 n.1 (9th Cir. 1992))); King v. Alaska S.S. Co., 431 F.2d 994, 996 (9th Cir. 1970) (where a plaintiff "sustained injuries aboard a ship upon navigable waters" that were "caused by conduct which occurred on those waters . . . , the legal rights and liabilities arising from the conduct in question are measurable by the standards of maritime law").[1]

At least until 2011, it was generally accepted that "saving clause claims brought in state court [we]re not removable under 28 U.S.C. § 1441 absent some other jurisdictional basis, such as diversity or federal question jurisdiction." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1069 (9th Cir. 2001); see also Dirkse v. Nu Venture Diving Co., No. LA CV17-08554 JAK (MRWx), 2018 WL 6133683, at *3 (C.D. Cal. May 21, 2018) (collecting cases). In 2011, the removal statute was amended in a potentially relevant way. Previously, it permitted removal "without regard to the citizenship or residence of the parties" only where "the district courts have original jurisdiction founded on a

---

[1] Plaintiffs' argument that federal jurisdiction is not exclusive, Remand Mot. at 11-12, misses the point and has no bearing on whether removal was proper. Regardless of whether this case proceeds in state or federal court, admiralty law will apply. Therefore, regardless of forum, Plaintiffs' arguments "that federal admiralty statutes" do not "preempt alternative state law remedies," Mot. at 12, will be resolved under admiralty law.

claim or right under the Constitution, treaties or laws of the United States."  <u>See</u> 28 U.S.C. § 1441(b) (2006).  "Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  <u>Id.</u>  The 2011 amendments removed this limitation.  The Ninth Circuit has not yet spoken as to the effect this change has, if any, on the removability of maritime claims where diversity jurisdiction does not exist.  For purposes of this motion, the Court assumes, without deciding, that the 2011 amendments to the Federal Rules of Civil Procedure did not change the rule that the saving-to-suitors clause generally prohibits removal.

However, that does not end the inquiry.  Defendants contend the Maas' cruise tickets contained a forum selection clause requiring them to bring this lawsuit in federal court and waiving any right to seek remand and that, because of this waiver, the animating reasons behind preventing removal, such as protecting remedies available at law and the balance between state and federal courts, are irrelevant.  <u>See</u> Remand Opp'n at 1-2, 5-9.  Plaintiffs contend removal is a procedurally improper way to enforce a forum selection clause, and in any event, the forum selection clause is not enforceable.  Remand Mot. at 13-15; Remand Reply at 1, 6.

## 1. Whether the Forum Selection Clause Waives Right to Seek Remand

Defendants contend Plaintiffs waived their right to seek remand based on a forum selection clause requiring cruise ship passengers to bring all suits in federal court that can be brought in federal court.[2]  <u>See</u> Remand Opp'n at 6.  Specifically, the ticket contract states:

---

[2] Plaintiffs do not dispute that this action could have been brought in federal court under the Court's admiralty jurisdiction.  <u>See</u> Remand Mot. at 10; <u>see also</u> <u>DeRoy v. Carnival Corp.</u>, 963 F.3d 1302, 1311-12 (11th Cir. 2020) (federal courts have subject matter jurisdiction over "personal-injury claims for injuries that occurred at sea" because "those claims fall squarely within the admiralty jurisdiction of the district courts" and "when admiralty is the

> All claims or disputes involving Emotional Harm, bodily
> injury, illness to or death of any Guest whatsoever,
> including without limitation those arising out of or relating
> to this Passage Contract or Your Cruise, shall be litigated
> in and before the United States District Courts for the
> Central District of California in Los Angeles, or as to those
> lawsuits over which the Federal Courts of the United
> States lack subject matter jurisdiction, before a court
> located in Los Angeles County, California, U.S.A., to the
> exclusion of the courts of any other country, state, city,
> municipality, county or locale. You consent to jurisdiction
> and waive any objection that may be available to any such
> action being brought in such courts.

Dkt. 29-1 (Steinke Decl.) ¶ 15.[3]  This forum selection clause unambiguously covers Plaintiffs' claims, which are based on the Maas being infected with COVID-19 "on the *Coral Princess* and Mr. Maa eventually d[ying] from the virus," Compl. ¶ 114, which caused Mrs. Maa "great physical, mental, emotional, and nervous pain and suffering," id. ¶ 118.  Therefore, the Court now turns to the question of whether such a clause can waive Plaintiffs' right to seek remand of their claims.

Under the removal statute, procedural defects may be waived. See Kelton Arms Condominium Owners Ass'n v. Homestead Ins., 346 F.3d 1190, 1192 (9th Cir. 2003) ("procedural requirements exist primarily for the protection of the parties" and "can be waived"); see also Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1544-45 (5th Cir. 1991) ("the word 'procedural' in section 1447(c) refers to any defect that does not involve the inability of the federal district court to entertain the suit as a matter of its original subject matter jurisdiction").  In Morris,

---

only basis for jurisdiction, then admiralty jurisdiction applies, regardless of how the plaintiff designates her case").

[3] It appears Defendants inadvertently failed to include the referenced attachments to the Steinke Declaration.

the Ninth Circuit held that the protections provided by the savings-to-suitors clause were procedural, and therefore could be waived. 236 F.3d at 1069 (because it was the "removal proceedings, which 'are in the nature of process,' [that] were defective," "the district court's removal jurisdiction is not destroyed where the plaintiff fails to seek remand" because the claims at issue "arise under maritime law" and therefore "they would have invoked the court's admiralty jurisdiction had [the plaintiff] brought them originally in federal court." (quoting Baris, 932 F.2d at 1545).

Plaintiffs contend that "Morris creates no higher barrier to proceeding in state court than to hold plaintiffs to their choice when they waive saving to suitors by failing to seek remand" and "[t]his very filing therefore eliminates Morris as a possible basis for upholding defendants' removal, and, in fact, supports remand." Remand Mot. at 10 (citing Morris, 236 F.3d at 1069). They note that Morris "did not reach the issue of a supposed pre-litigation contractual waiver of the right to resist removal." Id. at 13; see also Remand Reply at 8 ("[T]he plaintiff's waiver of their right to proceed in a state forum had nothing at all to do with any forum selection clause, but rather resulted from the plaintiff's complete failure to object to the removal being improper."). While this is true, Plaintiffs present no reasoned basis why Morris should be limited to waiver due to failure to seek remand after removal. To the contrary, like the plaintiffs in Morris, the Maas should also be held "to their choice when they waive saving to suitors" by agreeing to a forum selection clause. Therefore, the reasoning behind Morris extends to a pre-litigation agreement to waive remand. The Court acknowledges the lack of case law on the issue, presumably because there are limited situations in which federal courts have subject matter jurisdiction over a case, but where removal is otherwise not permitted. Nevertheless, the case law supports the Court's conclusion. First, the Ninth Circuit has routinely enforced waivers of the right to remove in forum selection clauses. See, e.g., Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co., 940 F.2d 550, 554 (9th Cir. 1991) (noting that defendant "could waive all or a part" of its "right to

remove" in a forum selection clause).  There is no reason why waivers of the right to remand should be treated differently.

Additionally, the Court looks to how other courts have treated an analogous issue – waiver of the forum defendant rule.  Like the savings-to-suitors clause, under the forum defendant rule, "if the plaintiff chooses to bring his claims in state court against a resident defendant, the defendant cannot remove the case to federal court, even if the case could have been originally brought in federal court under diversity jurisdiction."  Capital Rest. Grp., LLC v. Burger King Corp., No. 19-22131-Civ-Scola, 2019 WL 5102162, at *2 (S.D. Fla. Oct. 11, 2019).  In Capital Restaurant, "the Plaintiff [wanted] to bring its state claims in state court but, pursuant to the forum selection clause, [had to] bring its claims in the Southern District of Florida if the court has subject matter jurisdiction."  Id.  The forum selection clause stated that "the parties 'agree that, in the event of litigation arising out of or in connection with this Agreement in these courts, they will not contest or challenge the jurisdiction or venue of these courts.'"  Id. at *3.  The district court concluded that "the Plaintiff waived any right to bring its case in state court or rely on the resident defendant rule to remand to state court" because "[t]he parties unambiguously agreed to litigate in federal court if there is federal jurisdiction."  Id.  Other district courts have reached the same conclusion.  See, e.g., Uboh v. U.S. Equestrian Found., 384 F. Supp. 3d 780, 785-86 (E.D. Ky. 2019) (holding that "a party may prospectively waive a removal defect based on the forum defendant rule in a contractual forum selection provision," relying in part on cases holding that waivers of removal in forum selection clauses were permissible); Nanotech Entm't, Inc. v. R&T Sports Mktg., Inc., No. 14-61608-CIV, 2014 WL 12611203, at *2 (S.D. Fla. Sept. 24, 2014) ("the 'forum defendant rule' imposed by section 1441(b)(2) is not a jurisdictional limitation, and is instead a procedural hurdle to remand" that "a party may waive"); cf. Klayman v. Judicial Watch, Inc., 185 F. Supp. 3d 67, 72 (D.D.C. 2016) ("Just as a permissive forum selection clause does not have the effect of waiving a party's right to remove, the Court concludes that a permissive forum selection clause does not waive a party's right to remand based on the forum defendant rule.").

Here the forum selection clause requires actions to be brought in federal court if the federal court has subject matter jurisdiction and states that cruise passengers "consent to jurisdiction and waive any objection that may be available to any such action being brought in such courts."  Steinke Decl. ¶ 15.  The Court finds these cases persuasive in concluding that a forum selection clause like the one at issue here may act as a valid waiver of a plaintiff's right to seek remand of admiralty cases.

Next, Plaintiffs contend the Supreme Court held in <u>Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas</u> that "there were only two proper procedural mechanisms for a defendant who seeks to enforce a forum-selection clause in federal court – neither of which are a motion for removal or remand."  Dkt. 37 (Remand Reply) at 1 (citing <u>Atl. Marine</u>, 571 U.S. 49, 52, 60-61 (2013).  According to Plaintiffs, the Court must therefore ignore the forum selection clause in deciding whether removal was proper.  <u>Id.</u> at 1, 6.  But <u>Atlantic Marine</u> does not apply here.  That case considered the situation where a plaintiff improperly chooses to file in a particular federal court, when another federal court, state court, or foreign court is mandated by a forum selection clause.  It does not address the proper method to enforce a forum selection clause selecting a federal court in the same location as the state court in which a plaintiff chose to file suit.  It is true that in the cases cited by Defendants, the defendants generally sought dismissal in the state court, rather than removal to the federal court.  <u>See</u> <u>Korman v. Princess Cruise Lines, Ltd.</u>, 32 Cal. App. 5th 206, 223 (2019) (affirming dismissal of action brought by a passenger who was injured on a Princess cruise ship for forum non conveniens based on an identical forum selection clause); <u>DeRoy</u>, 963 F.3d at 1315-16 ("binding case law in state court would have required the state court to dismiss [the plaintiff's] claim in accordance with the forum-selection clause"); <u>Lischinskaya v. Carnival Corp.</u>, 56 A.D.3d 116, 121 (N.Y. App. Div. 2008) ("the Saving to Suitors Clause does not bar dismissal of the plaintiff's claim on the basis of the forum selection clause to which she agreed"); Remand Opp'n at 8 (collecting cases).  However, nothing in

these opinions indicates that a motion to dismiss based on forum non conveniens is the sole method by which the defendant could enforce the clause.

Plaintiffs also contend "litigants cannot automatically create removal jurisdiction by contract where none would otherwise exist," and "[e]ven given mutual contractual assent to do so, proceeding in a given location or forum still requires a statutory basis for jurisdiction." Remand Mot. at 13.  But here the parties are not creating removal jurisdiction; they are waiving any objections to removal jurisdiction. And there is a statutory basis for jurisdiction under section 1333(1) providing district courts with original admiralty jurisdiction.  Plaintiffs also contend that "the contract language contemplates proceeding in state or federal court, but saving to suitors limits the parties' access to federal jurisdiction."  Id.  The Court disagrees.  First, the contract contemplates proceeding in state court only where the claims could not be brought in federal court.  And because this action undoubtedly could have been brought in federal court, the contract does not authorize it to be brought in state court.  Second, the saving-to-suitors clause does not limit access to federal jurisdiction; rather it provides state courts with concurrent jurisdiction in certain situations.  A Washington state appellate court convincingly rejected a similar argument:

> The Oltmans contend that under the federal savings to suitors clause they were entitled to file in state court, and that when they did so, the federal court was deprived of subject matter jurisdiction. That being the case, they reason, they were entitled to file in state court under the exception in the forum selection clause permitting suit to be brought in King County courts if the federal district court lacked subject matter jurisdiction.  Their argument is circular.

Oltman v. Holland Am. Line USA, Inc., 163 Wash. 2d 236, 259 (2008).  Moreover, that a plaintiff's decision to file in state court does not deprive the federal court of subject matter jurisdiction formed the basis of the holding in Morris.  236 F.3d at 1069 ("a state plaintiff may waive

the improper removal of a savings clause claim" because "the federal court would have had original jurisdiction over the claim in the first instance"); <u>see also</u> <u>Korman</u>, 32 Cal. App. 5th at 223 (rejecting argument that "failure to remove the matter to federal court within 30 days strips the federal court of subject matter jurisdiction").

For these reasons, the Court concludes that the forum selection clause at issue here (to the extent enforceable, as discussed below) warrants denial of remand because Plaintiffs have waived their right to object to removal and to seek remand.

## 2.    Whether the Forum Selection Clause is Enforceable

At the outset, Defendants make a procedural objection to Plaintiffs' arguments that the forum selection clause is not enforceable. The Remand Motion states only that "Plaintiffs anticipate much disputation about contract terms in California state court" and "may raise any number of challenges to Defendants' asserting the Passage Contract as a defense," and then lists some examples.[4]  Remand Mot. at 14-15.  Defendants contend Plaintiffs do not actually argue that the contract is unenforceable, but only list potential arguments, which is insufficient to obtain remand.  Instead, Defendants argue, Plaintiffs "would need to establish that the allegations in support of removal in the Notice are insufficient as a matter of law, or they would need to

---

[4] The motion included the following four examples: 1) the Maas "made their original travel bookings through Costco Travel, not directly with Defendants," Remand Mot. at 14 (citing Compl. ¶ 90); 2) "Defendant Princess later announced an intention to impose 'an aggressive regime of cancellation penalties' constraining Plaintiffs' ability to reschedule without expense," <u>id.</u> at 14-15 (citing Compl. ¶ 91); 3) "Defendants have not yet made an argument or showing as to when the Passage Contract purportedly went into effect," <u>id.</u> at 15; and 4) Defendants did not "reasonably communicate[] [the terms] to otherwise unwitting passengers," <u>id.</u>  Defendants persuasively showed why each of these examples do not invalidate the forum selection clause here. Remand Opp'n at 12-17.  Moreover, Plaintiffs did not respond to Defendants' arguments or provide any further argument that the forum selection clause is not enforceable on one or more of these grounds.

challenge and disprove a fact necessary to support removal." Remand
Opp'n at 10-11. Because Plaintiffs do not do this, Defendants contend
they have not met their burden of showing that the forum selection
clause is unenforceable. Plaintiffs do not address this argument in
their Reply, instead contending that "there are serious factual and legal
issues concerning the validity of the contract between the parties and
the terms therein." Remand Reply at 1. However, Plaintiffs fail to
explain why they did not fully raise those factual and legal issues in
their Remand Motion.[5] "Enforceability of a forum selection clause in a
passenger cruise contract 'is a case in admiralty, and federal law
governs the enforceability of the forum-selection clause . . . .'"
<u>Schlessinger v. Holland Am., N.V.</u>, 120 Cal. App. 4th 552, 557 (2004)
(alteration in original) (quoting <u>Carnival Cruise Lines, Inc. v. Shute</u>,
499 U.S. 585, 590 (1991)), <u>as modified</u> (July 9, 2004). "Both California
and federal law presume a contractual forum selection clause is valid
and place the burden on the party seeking to overturn the forum
selection clause." <u>Korman</u>, 32 Cal. App. 5th at 216 (2019) (quoting
<u>Schlessinger</u>, 120 Cal. App. 4th at 558). Therefore, the burden is on
Plaintiffs to show that the forum selection clause is invalid, not the
other way around. Plaintiffs have failed to meet that burden.

First, Plaintiffs effectively fail to address the recent cases holding
that identical, or nearly identical, forum selection clauses are valid.
<u>See, e.g.</u>, <u>Korman</u>, 32 Cal. App. 5th at 223 (2019) (affirming dismissal of
action brought by a passenger who was injured on a Princess cruise
ship for forum non conveniens on the basis of an identical forum
selection clause); <u>DeRoy</u>, 963 F.3d at, 1315-16 ("While the saving-to-
suitors clause gives state and federal courts concurrent jurisdiction
over admiralty <i>in personam</i> cases such as this one, parties are free to

---

[5] Plaintiffs invoke the rule that "[a]ny doubt about removal is to be resolved
in favor of remand." Remand Reply at 10 (quoting <u>Gaus v. Miles</u>, 980 F.2d
564, 566 (9th Cir. 1992)). However, Plaintiffs are not free to create "doubt" by
intimating that they might make certain arguments after the case is
remanded (if it is remanded). Doubt refers to arguments made, and facts
presented, in the motion for remand.

contract for a federal forum for potential claims, provided, of course, that the federal forum has independent subject-matter jurisdiction. . . . [I]n the absence of a binding federal holding that the district court did not enjoy jurisdiction over [plaintiff's] claim, binding case law in state court would have required the state court to dismiss her claim in accordance with the forum-selection clause."); see also Remand Opp'n 13 (citing Loving v. Princess Cruise Lines, Ltd., No. 08-cv-2898-JFW, 2009 WL 7236419, at *3-4 (C.D. Cal. Mar. 5, 2009)); id. at 14 (collecting cases).[6]

Next, Plaintiffs attempt to raise a number of new arguments in their Reply as to why the forum selection clause in unenforceable. A "district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). In any event, Plaintiffs' arguments fail. First, Plaintiffs contend "the passage contract which Defendants want this Court to enforce was not presented to Plaintiffs prior to their booking of the cruise nor upon entering the transaction." Remand Reply at 1; id. at 6-7 ("here, Defendant admits plaintiffs were not provided with the passage contract or made of aware of their entry into the contract until after the transaction").[7] However, Plaintiffs provide no legal argument or citation to case law that requires the passage contract to be provided prior to booking. To the contrary, many cruise line cases require only that the passenger "had an opportunity to review the contract *before boarding*." Schlessinger, 120 Cal. App. 4th at 559 (emphasis added). The Maas booked the cruise and received the terms and conditions more than a year prior to boarding. Steinke Decl. ¶¶ 3-4, 16, 18. Plaintiffs cannot reasonably contend that this is an insufficient amount of time for review. See Schlessinger, 120 Cal. App. 4th at 559 ("plaintiffs booked the cruise months in advance and had ample

---

[6] Plaintiffs' attempt to distinguish some of these cases, Remand Mot. at 13-14, is unpersuasive.

[7] Defendants note that the passage contract was available to the Maas online prior to booking. Steinke Decl. ¶ 11.

opportunity to become acquainted with the terms of the contract via the brochure, HAL's web site and their travel agent").

Plaintiffs also contend that it was insufficient for the terms and conditions to be contained solely in a hyperlink in a PDF attached to a confirmation email in part because Defendants do "not specify what page in the PDF included the link to the claimed passage contract." Remand Reply at 2; id. at 7 ("plaintiffs were required to click into a PDF attached to an email, and then click into a link (on some unknown and as yet unidentified page of the PDF) to then finally view the passage contract"). As noted above, this was clearly an oversight, as Defendants purported to attach the described PDF to the Steinke Declaration. See Steinke Decl. ¶ 4. Nevertheless, it is Plaintiffs' burden to show that the hyperlink's location in the PDF renders the forum selection clause invalid. More importantly, that PDF was not the only notice the Maas received containing the passage contract. The Maas also were required to enter immigration information through the Cruise Personalizer. See id. ¶ 6. On logging into the Cruise Personalizer, a dialog box with the passage contract pops up, requiring that the person logged into the account check a box confirming that each passenger on the ticket agrees to the terms and conditions before proceeding. Id. ¶¶ 8-9. The Maas agreed to the passage contract in this manner on March 16, 2019. Id. ¶ 16.[8]

---

[8] Plaintiffs contend the only relevant contract was the one applicable in January 2019 at the time they booked their cruise because the confirmation email stated "*[u]pon booking the Cruise*, each Passenger explicitly agrees to the terms of the Passage Contract (https://www.princess.com/legal/passage_contract/)." Remand Reply at 2-3 (alteration in original) (citing Steinke Decl. ¶ 4). And because "the passage contract was revised, amended, and/or changed after plaintiffs allegedly agreed to it in January 2019, when they booked the cruise and first received the Booking Confirmation PDF email[,] [t]here was no meeting of the minds." Id. at 3. However, Plaintiffs provide no evidence that any material terms were changed between January and February 2019. Moreover, Plaintiffs provide no legal basis for discounting their March 2019 acceptance of the

Finally, Plaintiffs contend Defendants fail to submit evidence that "that the passage contract online never changes," "that plaintiffs agreed to the passage contract terms as presented in the declaration," and "that the terms of the passage contract plaintiffs allegedly agreed to were not unliterally changed by defendants thereafter and prior to the cruise." Remand Reply at 2. But Steinke does declare that "the clauses at issue in this motion are identical in all versions of the Passage Contract." Steinke Decl. ¶ 11. Plaintiffs provide no evidence to the contrary.[9] Plaintiffs also challenge Steinke's "personal knowledge of the plaintiffs' acceptance of the passage contract or . . . personal knowledge of which passage contract plaintiffs allegedly accepted." Remand Reply at 2. But Steinke declares that he "obtained [the information in his declaration] through the business records created automatically and contemporaneously with the events described here and maintained in the ordinary court of business," Steinke Decl. ¶ 1; see also id. ¶¶ 3, 8, and that he is "personally familiar with the company's Booking Terms and Conditions, Passage Contract, and the systems in place to notify guests of these documents and to confirm their acceptance of the Passage Contract," id. ¶ 10. This is sufficient.

Because Plaintiffs have failed to meet their burden of establishing that the forum selection clause is invalid or unenforceable, the Court concludes that Plaintiffs have waived their right to seek remand. Therefore, Plaintiffs' motion to remand is DENIED.

---

terms and conditions just because they had already "entered" into the contract in January. Remand Reply at 3-4.

[9] Plaintiffs do contend that the version of the passage contract available online was apparently revised in February 2019, while the Maas bought their cruise tickets in January 2019, prior to the revision. Remand Reply at 3. However, based on the Steinke Declaration, there is no evidence that the purported February 2019 revision changed the relevant provisions of the contract. Moreover, as discussed above, the Maas agreed to the contract at issue in March 2019, after the purported February 2019 revision. See Steinke Decl. ¶ 16.

**B.     Motion to Dismiss**

**1.     Choice of Law**

Defendants correctly assert that Plaintiffs' claims are governed by federal maritime law.  Princess Mot. at 2-3; Carnival Mot. at 4.[10] Federal maritime law applies when 1) "the tort occurred on navigable water or . . . injury suffered on land was caused by a vessel on navigable water" and 2) "the tort ha[s] a 'significant relationship to traditional maritime activity.'"  Adamson, 907 F.3d at 1126 (quoting In re Mission Bay Jet Sports, LLC, 570 F.3d 1124, 1126 (9th Cir. 2009)). "[V]irtually every activity involving a vessel on navigable waters" is a "traditional maritime activity sufficient to invoke maritime jurisdiction."  Taghadomi v. United States, 401 F.3d 1080, 1087 (9th Cir. 2005) (quoting Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 542 (1995)).  Here, Plaintiffs allege that Defendants continued operations without taking certain measures onboard the Coral Princess to protect the Maas and other passengers from contracting COVID-19.  See, e.g., Compl. ¶ 113; see also Carnival Mot. at 5.  Personal injury claims aboard cruise ships consistently satisfy this test.  See, e.g., DeRoy, 963 F.3d at 1312 (negligence claims based on personal injury fall within admiralty jurisdiction because "the incident precipitating [plaintiff's] claim occurred while the [cruise ship] was traveling at sea" and "unchecked personal injuries allegedly resulting from a cruise-ship operator's negligence have the potential to disrupt maritime commerce, and [plaintiff] suffered her injury while participating as a passenger on a cruise, which is a traditional maritime activity"); Wallis v. Princess Cruises, Inc., 306 F.3d 827, 840-41 (9th Cir. 2002) ("A cruise line's treatment of paying passengers clearly has potential to disrupt commercial activity, and certainly has substantial relationship to traditional maritime activity" so general maritime law applies to plaintiff's claim for intentional infliction of emotional distress); Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318,

---

[10] Plaintiffs do not address this argument.  The Court construes Plaintiffs' silence as agreement that federal maritime law applies to their claims.

1320 (11th Cir. 1989) ("the substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law"). Therefore, maritime law applies to Plaintiffs' claims.[11]

### 2. DOSHA

Defendants contend that the claims brought on behalf of the Estate of Wilson Maa are preempted by the Death on the High Seas Act (DOHSA).[12] Carnival Mot. at 5; Princess Mot. at 8. DOHSA applies where "the site of an accident [is] on the high seas" regardless of where "death actually occurs or where the wrongful act causing the accident may have originated. . . . It is . . . irrelevant that decisions contributing to the [boat's] unseaworthiness may have occurred onshore or within territorial waters," Bergen v. F/V St. Patrick, 816 F.2d 1345, 1348 (9th Cir. 1987), opinion modified on reh'g, 866 F.2d 318 (9th Cir. 1989). Plaintiffs ignore this binding Ninth Circuit case law and instead point to irrelevant factual allegations that "Mr. Maa died on shore," that "numerous acts and omissions leading to the alleged harms undertaken by Defendants not at sea, but on land," and that "Defendants sold

---

[11] As noted above, "if the district court could have maritime jurisdiction over a tort claim, '[s]ubstantive maritime law controls' the claim, 'whatever the forum or asserted basis of jurisdiction.'" Adamson, 907 F.3d at 1126 (alteration in original) (quoting Unigard, 982 F.2d at 366 n.1); see also Ghotra, 113 F.3d at 1054 (same); King, 431 F.2d at 996 (where a plaintiff "sustained injuries aboard a ship upon navigable waters" that were "caused by conduct which occurred on those waters . . . , the legal rights and liabilities arising from the conduct in question are measurable by the standards of maritime law").

[12] DOHSA applies to any "wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States." 46 U.S.C. § 30302; Helman v. Alcoa Glob. Fasteners, Inc., 637 F.3d 986, 990-91 (9th Cir. 2011) ("[T]he term 'high seas' is defined for purposes of the statute by the explicitly stated geographic boundary of 'beyond three nautical miles' from shore").

Plaintiffs the air travel" from "their home base in California to South America."  MTD Opp'n at 16 (citing Compl. ¶¶ 9, 15, 58-64, 77, 89-90).

Here, the "site of [the] accident" was clearly "on the high seas." See Wong v. Carnival Corporation & PLC, No. 2:20-cv-04727-RGK-SK, Dkt. 35 at 7 (C.D. Cal. Sept. 4, 2020) ("[T]he relevant site would be the place where [the deceased passenger] contracted COVID-19."); Moyer v. Rederi, 645 F. Supp. 620, 628 (S.D. Fla. 1986) ("The key operative fact . . . is that the decedent's illness commenced while he was participating in the snorkeling expedition; i.e., while he was on the high seas, as defined by DOHSA" and it does not matter that the plaintiff alleged that "Defendants acted negligently both before and after the snorkeling expedition").  Plaintiffs allege that they "both got COVID-19 on the *Coral Princess*."  Compl. ¶ 114.  Given that the Coral Princess departed from Chile on March 5, 2020, id. ¶¶ 12-13, and did not leave the high seas until April 4, 2020 when it arrived in Miami, Florida, see id. ¶ 95, it is clear from the face of the Complaint that Mr. Maa contracted COVID-19 on the "high seas."  The Complaint alleges that on March 29, 2020 "as the cruise ship remained at sea en route from Buenos Aires to Fort Lauderdale, Mr. Maa began feeling unwell," that on March 31, 2020, Mr. Maa was tested for COVID-19 and that his test was processed in the Barbados, and that on April 1, 2020 he learned that he tested positive.  Id. ¶¶ 92-94.  These facts clearly establish that Mr. Maa was on the high seas at the time he contracted COVID-19.[13]

Therefore, DOHSA preempts the survival claims brought on behalf of the Estate of Wilson Maa.  See Bergen, 816 F.2d at 1350 ("DOHSA preempts state wrongful death law"); Dooley v. Korean Air Lines Co., 524 U.S. 116, 118 (1998) (DOHSA does not permit "recovery for the decedent's pre-death pain and suffering . . . through a survival action under general maritime law").  The claims asserted on behalf of

---

[13] The Court GRANTS Princess's unopposed request for judicial notice, Dkt. 22 (Princess Reply) at 3 & n.2, that "Barbados is approximately 1,598 miles Southeast of the vessel's ultimate destination of Miami, Florida."  Fed. R. Evid. 201(b).

Mr. Maa are DISMISSED with leave to amend to bring an appropriate claim under DOHSA.

### 3.    Standing

Defendants contend Mrs. Maa has not adequately alleged that she has been appointed to be the personal representative for Mr. Maa's estate or that she is Mr. Maa's successor-in-interest.  Princess Mot. at 5-8; Carnival Mot. at 15.  Although Mrs. Maa alleges that she "is a proper personal representative and heir pursuant to California law and admiralty law," Compl. ¶ 12, she does not allege that she was appointed personal representative by a court and did not file the required declaration under California law.  On August 28, 2020, Mrs. Maa filed a declaration pursuant to California Code of Civil Procedure Section 377.32 declaring that she is Mr. Maa's successor-in-interest.  Dkt. 28 (Maa Decl.).  However, given the Court's conclusion that DOHSA applies to Mr. Maa's claims, that declaration fails to satisfy the requirement under DOSHA that Mrs. Maa be legally appointed as Mr. Maa's personal representative.  See Helman v. Alcoa Glob. Fasteners, Inc., 843 F. Supp. 2d 1038, 1042 (C.D. Cal. 2011) (finding it insufficient for complaint to allege that plaintiffs were "successors-in-interest," instead requiring "allegation of court-appointment as personal representatives").  Plaintiffs' conclusory assertion that their "allegations are sufficient," MTD Opp'n at 16, is not enough to survive a motion to dismiss.  Any amended complaint should contain allegations that Mrs. Maa is the court-appointed personal representative for Mr. Maa's estate.

### 4.    Carnival's Duty of Care

Carnival contends "Plaintiffs have not alleged that Carnival Corporation or Carnival plc owed passengers on the *Coral Princess* a legally cognizable duty of care."  Carnival Mot. at 6.[14]   It is "the

---

[14] Plaintiffs do not address Carnival plc, which is a corporate affiliate of Princess, separately from Carnival Corporation.  The Complaint alleges that "[t]his lawsuit is being brought against the dual-listed company and/or Carnival Corporation.  Compl. ¶ 14.  Plaintiffs cannot bring a complaint

shipowner and the carrier" who owe a duty of care to their passengers. <u>Chan v. Soc'y Expeditions, Inc.</u>, 123 F.3d 1287, 1290-91 (9th Cir. 1997). Plaintiffs do not plausibly allege that Carnival is the owner or carrier of the Coral Princess, nor do they so argue in the Opposition.  The Complaint states in conclusory fashion that "[a]t all times hereto, PRINCESS and CARNIVAL  . . . controlled and operated the cruise ship *Coral Princess*."  Compl. ¶ 17; <u>see also</u> <u>id.</u> ¶ 29 ("CARNIVAL operates 'nine cruise lines . . . .'").  However, Plaintiffs do not point to any facts to support these assertions.  To the contrary, the Complaint alleges that "all major decisions regarding the operation of [Princess's] cruise ships are made at the headquarters in Santa Clarita, California." Compl. ¶15.  And Carnival points to the passage contract which states that Princess alone is the operator of the ship.  Carnival Mot. at 7-8. Further, the mere fact that Carnival Corporation is the corporate parent of Princess is insufficient by itself to impose any duty on Carnival.  <u>United States v. Bestfoods</u>, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries."); <u>see also</u> Carnival Mot. at 8-9 (collecting cases).  Therefore, Plaintiffs' basis for including Carnival appears based solely on their alter ego theory.  <u>See</u> MTD Opp'n at 15 ("[T]he identity of Princess and Carnival, as established through Plaintiffs' alter ego allegations, renders th[e] critique" that "only Princess, as formally disclosed owner/operator, can bear liability for Plaintiffs' injuries . . . irrelevant").

"Federal courts sitting in admiralty generally apply federal common law when examining corporate identity."  <u>Chan</u>, 123 F.3d at 1294.[15]  As Carnival notes, courts applying admiralty law can disregard corporate separateness only where "the controlling corporate entity exercise[s] *total domination* of the subservient corporation, to the extent that the subservient corporation manifests *no separate corporate*

---

against one company "and/or" another company.  Any amended complaint must clarify which entity or entities are being sued.

[15] Therefore, Plaintiffs' citations to California law on alter-ego status, MTD Opp'n at 12, 14, are inapposite.

*interests of its own.*"  Carnival Mot. at 11 (quoting <u>Chan</u>, 123 F.3d at 1294).  "Corporate separateness is respected unless doing so would work injustice upon an innocent third party."  <u>Chan</u>, 123 F.3d at 1294 (quoting <u>Kilkenny v. Arco Marine Inc.</u>, 800 F.2d 853, 859 (9th Cir. 1986)).  "[F]ederal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own."  <u>Id.</u>

Here, Plaintiffs contend they have "alleged a unity of interest between Princess and Carnival, including but not limited to, that Princess is a 'line' of Carnival."  MTD Opp'n at 12 (citing Compl. ¶¶ 11, 19, 27-34).  However, that Princess is a "line" of Carnival is just another way of saying Princess is a subsidiary of Carnival, which, as noted above, is not sufficient by itself to impose alter ego liability.[16]  Plaintiffs next contend that there is a "unity of ownership between Princess and Carnival."  <u>Id.</u> at 12-13 (citing Compl. ¶¶ 18-21, 28-34).  In the cited paragraphs, Plaintiffs allege, among other things, that Carnival "has ownership and control over" Princess as its wholly owned subsidiary and "exerts control over PRINCESS's business and day-to-day operations," and that Carnival and Princess "share the same Board of Directors and almost all of the same executive officers, and appear to use the same assets."  Compl. ¶¶ 19-21.  First, Carnival contends that these "conclusory . . . allegations of shared directors, executive officers, and assets are nowhere near sufficient under the stringent governing standard."  Carnival Mot. at 12; <u>see also</u> Dkt. 23 (Carnival Reply) at 5 ("Plaintiffs' alter ego allegations are the exact sorts of conclusory assertions that courts find insufficient").  The Court agrees. Importantly, even taking Plaintiffs' conclusory allegations at face

---

[16] The same is true of Plaintiffs' allegation that Carnival refers to Princess as a "'Carnival Brand' cruise line" that is "part of our growing business."  Compl. ¶ 21.  Plaintiff requests leave to amend to add the fact that "Princess is a 'brand' of Carnival," MTD Opp'n at 13, but it is not clear how that allegation would differ from Paragraph 21 of the current Complaint.

value, Carnival correctly contends that ownership coupled with common officers or directors is insufficient to establish alter ego liability.  Carnival Reply at 5 (quoting 10 Fletcher Cyclopedia of the Law of Corporations § 4878 (West 2019)); cf. United States v. Bestfoods, 524 U.S. 51, 61-62 (1998) (exercise of control as shareholder and "duplication of some or all of the directors or executive officers" is not "fatal").  Here, there are no facts to indicate that the alleged "control" Carnival exercises over Princess extends beyond the control reasonably expected of a sole shareholder to "total domination."  Chan, 123 F.3d at 1294.  As Carnival points out, the allegation that "all major decisions regarding the operation of [Princess's] cruise ships are made at the headquarters in Santa Clarita, California," Compl. ¶15, "surely . . . 'manifests' at least *some* 'separate corporate interests of its own.'" Carnival Reply at 4 (quoting Chan, 123 F.3d at 1294).

Plaintiffs also contend that "an unjust result will occur if Princess is treated as the sole actor since the chief medical officer for Princess, who was also the author of the notice provided to Plaintiffs while onboard the *Coral Princess* related to COVID-19, is employed by Carnival and is the chief medical officer for all of Carnival's lines." MTD Opp'n at 13 (citing Compl. ¶¶ 11, 65).  As Carnival notes, "Plaintiffs do not explain why it would be unjust to limit their suit to the corporate subsidiary that actually operated Plaintiffs' vessel and that allegedly employed the individual they have identified."  Mot. at 7. Nor is it obvious to the Court why the fact that Dr. Tarling is allegedly employed by Princess and Carnival would lead to an unjust result. Assuming Plaintiffs are correct that Dr. Tarling is employed by Princess, his statements and knowledge can, if appropriate, be attributed to Princess regardless of whether he is also employed by Carnival.

The Court concludes Plaintiffs have not adequately alleged that Carnival is the alter ego of Princess.  See Wong, Dkt. 35 at 6 (holding that nearly identical allegations do not plausibly allege that Carnival is

the alter ego of Princess).  The Carnival entities are DISMISSED with leave to amend.[17]

### 5. Group Pleading

Defendants argue that Plaintiffs' Complaint should be dismissed because it fails to explain which actions were taken by which Defendant.  Princess Mot. at 3 ("Plaintiffs' Complaint makes it impossible for PRINCESS to determine which claims are directed to PRINCESS, and which acts or omissions Plaintiffs ascribe to CARNIVAL"); Carnival Mot. at 10 ("This form of group pleading makes it impossible to discern which defendant is responsible for any particular course of conduct and can improperly be used to erase corporate distinctions").

"[U]nder the federal rules a complaint is required only to give [] notice of the claim such that the opposing party may defend himself or herself effectively."  Starr, 652 F.3d at 1212.  "[A] complaint which lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)."  Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015).  Plaintiffs contend that it is permissible to group defendants together where each is "accused of participating in all of the wrongful conduct alleged to have been carried out by some or all of the entity defendants."  MTD Opp'n at 6 (quoting Tivoli LLC v. Sankey, No. SA CV 14-1285-DOC (JCGx), 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015)).  Specifically, some of the wrongful conduct was alleged to have been committed by Dr. Tarling, who is purportedly a senior executive of Carnival and Princess.  Id.  However, that Dr. Tarling was employed by

---

[17] Plaintiffs seek to add allegations that "Princess is facing significant legal liabilities this year alone . . . and there is also a concern about its financial wherewithal considering that operations have also been shut down at times and slowed down significantly due to COVID-19" and also that the announcement to shut down Princess operations on March 12 was made by Carnival for all of its cruise lines.  MTD Opp'n at 13.  Plaintiffs are not limited to these allegations if they file an amended complaint.

both Princess and Carnival when he made certain statements does not make both Princess and Carnival liable in negligence to Plaintiffs – Plaintiffs still must allege a duty of care owed by each defendant.  Dr. Tarling's joint employment by itself does not show that all three Defendants participated in all of the wrongful conduct alleged.

Princess contends Tivoli is distinguishable because the entities in that case were "closely related" and here, unlike in Tivoli, "it is implausible that each and every allegation could implicate all three defendants."  Princess Reply at 5-6; see also Carnival Reply at 7 (Plaintiffs "have not alleged facts to plausibly establish that each of their factual allegations could possibly describe conduct undertaken by Carnival Corporation, Carnival plc, and Princess.").  For example, the Complaint states that "DEFENDANTS boarded the *Coral Princess*," Compl. ¶54, and that the "officers, directors, and/or managing agents of DEFENDANTS, and/or each of them, made the negligent, wrongful, unlawful, and/or reckless decision to continue cruise ship operations without implementing any safety protocols . . . including but not limited to . . . providing medical apparatuses" and "disinfecting, decontaminating, and/or sanitizing the exposed surfaces of the cruise ship prior to boarding passengers," id. ¶ 113.  Given that Princess operated the ship, Plaintiffs do not explain how Carnival could have participated in the boarding process, distributed personal protective equipment to those on board, or sanitized the ship's surfaces.  To the extent Plaintiffs are attempting to assert Carnival's independent liability, the Complaint does not plausibly allege that Defendants all participated equally in every action alleged to have occurred; therefore the use of the term "defendants" throughout the Complaint violates

Rule 8.[18]  The Court grants Plaintiffs leave to amend to remedy this deficiency.[19]

## IV. CONCLUSION

Plaintiffs' motion to remand is DENIED.  Defendants' motions to dismiss are GRANTED.  All claims are DISMISSED with leave to amend.  An amended complaint must be filed no later than October 20, 2020.  Failure to file by that date will waive the right to do so.  Except as stated otherwise in this Order, the Court does not grant leave to add new defendants or new claims.  Leave to add new defendants or new claims must be sought by a properly-noticed motion.

IT IS SO ORDERED.

Date: September 21, 2020

Dale S. Fischer
United States District Judge

---

[18] If, however, Plaintiffs base Carnival's liability solely on an alter ego theory, it would likely be fair for the Defendants to be grouped together if Plaintiffs are able to successfully allege Defendants' alter ego status.  Any amended complaint should make clear whether Carnival's alleged liability is based on anything other than as Princess's purported alter ego.

[19] Princess also contends the SAC is an impermissible shotgun pleading because the first paragraph in both causes of action incorporates each of the preceding paragraphs.  Princess Mot. at 5.  Although the practice can be improper in certain circumstances, it does not violate Rule 8 here because it is clear from the face of the complaint what Defendants are alleged to have done.